**UNPUBLISHED ORDER**

Not to be cited per Circuit Rule 53

# United States Court of Appeals

For the Seventh Circuit
Chicago, Illinois 60604

Submitted May 11, 2005[*]
Decided May 16, 2005

Before

**Hon.** FRANK H. EASTERBROOK, Circuit Judge

**Hon.** DIANE P. WOOD, Circuit Judge

**Hon.** DIANE S. SYKES, Circuit Judge

| | |
|---|---|
| Nos. 04-2715, 04-2716, 04-2748 & 04-2801 | Appeals from the United States District Court for the Northern District of Indiana, South Bend Division. |
| LERON E. EASLEY-EL, *et al.*, *Plaintiffs-Appellants*, | |
| *v.* | Nos. 3:02-CV-579 RM, *et al.* Robert L. Miller, Jr., *Chief Judge*. |
| EVELYN RIDLEY-TURNER, *et al.*, *Defendants-Appellees*. | |

## Order

Four inmates of the Indiana State Prison contend in this suit under 42 U.S.C. §1983 that prison officials are violating the free-exercise clause of the first amendment by preventing leaders of a faction within the Moorish Science Temple of America from entering the prison to conduct services. Defendants contended that concerns about the criminal history and conduct of the Chicago Subordinate Temple Number One (which these plaintiffs support), plus other considerations, justify a temporary suspension of services. The district court agreed and granted summary judgment in their favor. See *Turner v. Safley*, 482 U.S. 78 (1987).

---

[*] After an examination of the briefs and the record, we have concluded that oral argument is unnecessary, and the appeal is submitted on the briefs and the record. See Fed. R. App. P. 34(a); Cir. R. 34(f).

May 16, 2005, at 12:25 PM

Although the district court treated the suspension as temporary, evidence in the record implies that it may last indefinitely. The Chicago Subordinate Temple appears to be at loggerheads with the main organization, based in Michigan. The prison's superintendent announced an indefinite suspension "until such time as your problems have been resolved to my satisfaction and that of Bro. R. Love El and Bro. S.A. Tinnin-Bey." Love-El and Tinnin-Bey are affiliated with the Michigan organization. This could be understood as taking sides in a theological debate, the equivalent of telling Lutherans that they could not hold services in prison "until such time as your problems have been worked out [to the satisfaction of] Pope Benedict XVI." That would violate the free exercise clause. Cf. *Sasnett v. Litscher*, 197 F.3d 290, 293 (7th Cir. 1999) ("One might as well tell Anglicans to kiss the Pope's ring but pretend he's the Archbishop of Canterbury."). Perhaps the letter has some other significance, but the district court has yet to explore the question.

Instead of assuming, as it did, that the suspension was of short duration, the district court must determine whether it is appropriate to condition the Chicago Subordinate Temple's services on the "satisfaction" of the superintendent and the Michigan group. The record hints (no stronger word can be used) that the superintendent would be satisfied if the Chicago group can demonstrate that its representatives are not felons themselves and do not denigrate other religions in a way that would stir unrest in a potentially explosive population. But, as the letter did not say what must be done to satisfy the superintendent, we cannot be sure that this is all that concerned the prison's administrators. Perhaps they are concerned that too few inmates support the Chicago group; prisons need not permit every sect, however small, to conduct religious services. See *Johnson-Bey v. Lane*, 863 F.2d 1308, 1310 (7th Cir. 1988). Perhaps something else is vital. Plaintiffs and their chosen spiritual guides are entitled to know what they must demonstrate before the prison will permit services to be held, and the district court then must determine whether the prison's conditions are valid.

Although we have been discussing the claim in constitutional terms, which is how plaintiffs present their contentions, the district court should address statutory options first. The Religious Land Use and Institutionalized Persons Act provides that "[n]o government shall impose a substantial burden on the religious exercise of a person residing in or confined to an institution," unless the burden "is in furtherance of a compelling governmental interest," and "is the least restrictive means" of furthering that interest. 42 U.S.C. §2000cc–1(a)(1), (2). Unless the Supreme Court holds in *Cutter v. Wilkinson*, cert. granted, 125 S. Ct. 308 (2004) (argued March 21, 2005), that RLUIPA violates the establishment clause of the first amendment, it is the appropriate place to start when analyzing plaintiffs' contentions.

One final matter. This began as a single suit with four plaintiffs; the district court splintered it into four suits with one plaintiff each. It should be re-united. See *Bouribone v. Berge*, 391 F.3d 852 (7th Cir. 2004). Each plaintiff must continue to speak for himself, however; none is a lawyer, so none can act as agent of another.

The judgment is vacated, and the case is remanded for further proceedings consistent with this order.